**In re HINES et al.**
No. 23039.

District Court, E. D. New York.
June 7, 1933.

Irving D. Lipkowitz, of New York City, for bankrupts.

James G. Moore, of New York City, for trustee.

John J. Bennett, Jr., Atty. Gen. (Anthony P. Ludden, Asst. Atty. Gen., of counsel), amicus curiæ.

MOSCOWITZ, District Judge.

The bankrupts seek to review an order made by one of the referees in bankruptcy, which provides:

"Ordered, that John P. Hines and Michael F. Hines, and each of them, individually and as co-partners, doing business under the firm name of Hines Brothers and the said Hines Brothers, the bankrupts herein, be and they hereby are ordered and directed to execute and deliver to William S. Brower, the trustee in bankruptcy herein, or his successor or successors in office, at the office of said William S. Brower as trustee, at the Hewlett-Woodmere National Bank Building, Woodmere, in the County of Nassau, or to James G. Moore, the attorney for said Trustee in bankruptcy, at his office No. 72 Wall Street, Borough of Manhattan, City of New York, before noon on the 5th day after the service of a certified copy of this order upon said bankrupts, or either or any of them, an order directed to the Department of Taxation and Finance, State Tax Commission, Albany, New York, requesting and requiring the said Tax Commission to deliver to said William S. Brower, as such trustee, certified copies of all income tax returns and amended returns filed with said Tax Commission by the said bankrupts and each of them, reporting the income of said bankrupts for the years 1927, 1928, 1929, 1930 and 1931, which said order so to be executed and delivered by the said bankrupts and each of them, shall be substantially in the following form, to wit:

" 'To the Department of Tax and Finance, State Tax Commission, Albany, New York. You are hereby authorized and directed to deliver to William S. Brower, Trustee in bankruptcy of the undersigned, or upon his order, pursuant to section 384 of the Tax Law of the State of New York, certified copies of all income tax returns and amended returns filed by the undersigned, reporting income of the undersigned for the years 1927, 1928, 1929, 1930 and 1931, and said William S. Brower, as such trustee, is authorized by the undersigned to receive the same.'

and which said order when so executed by said bankrupts shall be acknowledged by them and each of them before a Notary Public of the State of New York."

The referee in his report states:

"From the examination of the minutes under section 21a of the United States Bankruptcy Act it appears that in 1927 the bankrupts conveyed all of their real property and part of their personal property to Hinmar Realty Corporation and Aldorf Realty Corporation, both of which corporations were organized at the time of the transfers, and of which corporations the bankrupts then became and ever since have been executive officers and directors.

"No books, memoranda or papers in any way relating to the business of the bankrupts at the time of the transfer have been produced, and the bankrupts have testified that there are no such books, papers or memoranda now in existence.

"It is contended by the moving party that the income tax returns of the bankrupts for the years 1927 and 1928, filed with the Commission of Internal Revenue at Washington have been destroyed, pursuant to authority vested in the Commissioners by law, but that the State Tax Commission of the State of New York has in its office the original and amended returns of the bankrupts for the years 1927 and 1928 and subsequent years. Under the Federal statute and regulations a trustee of a bankrupt may obtain copies of income tax reports of a bankrupt, but in this instance said reports filed with the Commissioner of Internal Revenue have been destroyed."

It appears that the income tax returns of the bankrupts for the year 1927 and subsequent years are on file with the New York state tax commission. A demand was made upon the state tax commission for certified copies of such returns, fees of the state tax commission were tendered, and the returns were refused. The trustee thereupon brought the motion, which resulted in the order now on review.

The people of the state of New York for the department of taxation and finance were not made parties to this proceeding. However, the Attorney General of the state of New York, at the request of the court, has filed a memorandum amicus curiæ.

Section 384 of the Tax Law of the state of New York, chapter 62 of the Laws of 1909, as added to and amended (Consol. Laws, c. 60), contains the following provisions:

"§ 384. *Secrecy Required of Official; Penalty for Violation.* 1. Except in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful for the tax commission, any tax commissioner, agent, clerk, or other officer or employee to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required under this article. The officers charged with the custody of such reports and returns shall not be required to produce any of them or evidence of anything contained in them in any action or proceeding in any court, except on behalf of the tax commission in an action or proceeding under the provisions of this chapter to which it is a party, or on behalf of any party to any action or proceeding under the provisions of this article when the reports or facts shown thereby are directly involved in such action or proceeding, in either of which events the court may require the production of, and may admit in evidence, so much of said reports or of the facts shown thereby, as are pertinent to the action or proceeding and no more. *Nothing herein shall be construed to prohibit the delivery to a taxpayer or his duly authorized representative of a certified copy of any return or report filed in connection with his tax* nor to prohibit the publication of statistics so classified as to prevent the identification of particular reports or returns and the items thereof, or the inspection by the attorney-general or other legal representatives of the state of the report or return of any taxpayer who shall bring action to set aside or review the tax based thereon, or against whom an action or proceeding has been instituted in accordance with the provisions of sections three hundred and eighty and three hundred and eighty-one of this chapter. Reports and returns shall be preserved for three years and thereafter until the tax commission orders them to be destroyed.

"2. Any offense against subdivision one of this section shall be punished by a fine not exceeding one thousand dollars or by imprisonment not exceeding one year, or both, at the discretion of the court, and if the offender be an officer or employee of the state he shall be dismissed from office and be incapable of holding any public office in this state for a period of five years thereafter.

"3. Notwithstanding the provisions of this section, the tax commission may permit the commissioner of internal revenue of the United States, or the proper officer of any state imposing an income tax upon the incomes of individuals, or the authorized representative of either such officer, to inspect the income tax returns of any individuals, or may furnish to such officer or his authorized representative an abstract of the return of income of any individual or supply him with information concerning any item of income contained in any return, or disclosed by the report of any investigation of the income or return of income of any individual; but such permission shall be granted or such information furnished to such officer or his representative only if the statutes of the United States or of such other state, as the case may be, grant substantially similar privileges to the proper officer of this state charged with

the administration of the personal income tax law thereof."

The determination of this application depends upon the construction of the italicized portion of paragraph 1 of section 384, which reads as follows: "Nothing herein shall be construed to prohibit the delivery to a taxpayer or his duly authorized representative of a certified copy of any return or report filed in connection with his tax."

If the words "duly authorized representative" mean the trustee in bankruptcy, then the order entered by the referee was correct.

Section 384 of the Tax Law of the state of New York provides for the secrecy of income tax returns, and prescribes that any violation of the statute shall be punishable by fine or imprisonment or both. The purpose of this provision was to furnish greater security to the taxpayer, and thus encourage a frank and truthful income tax return, it being the intention of the state Legislature that the information contained in the return would be only available to the tax officials, the taxpayer, or his duly authorized representative.

The intention of the Legislature is clearly indicated in the opinion of Attorney General Charles D. Newton, dated April 16, 1920, which reads as follows:

"* * * I think it was the intent of the legislature to make the returns and other information supplied under the income tax law privileged communications between the taxpayers and the comptroller, not to be used in collateral proceedings as evidence, without the consent of the taxpayer. In order to extend the privilege beyond protecting the taxpayer against having his returns used against him in collateral proceedings, and to secure their complete secrecy, a very severe penalty is imposed on anybody divulging or making known in any manner any of the particulars of the returns.

"The object of this is to give the people confidence and to lessen the natural unpopularity of the tax. The legislature in effect says to the taxpayer: If you will file a return and pay your tax, you need not fear that statements in the returns will ever be used against you in any other connection. Should the returns be subject to subpœna in collateral proceedings, a great incentive would be added to existing motives for refraining from filing returns and the number of evasions of the tax would accordingly increase.

"If the returns are subject to subpœna in collateral actions, they might as well be generally open to public inspection, for nobody could say until after a return had been produced in court and examined by counsel and the judge, whether it was relevant to the proceedings before the court. And there would be nothing to prevent the demand by attorneys for the production, in an examination before trial, on a motion, at a trial, or in other proceedings, of any number of returns, made by persons directly or remotely connected with parties to the proceeding.

"* * * The addition of sub-division 3 of Section 384, Laws of 1920, chapter 60, does not modify my view. The purpose of that sub-division is to make possible the checking up of Federal and State returns, or of returns to this state and another state, for the purposes of better enforcement of income tax laws only."

The exception in the statute which permits the delivery of income tax returns to the taxpayer or his duly authorized representative is intended solely for the benefit of the taxpayer or a representative designated by him personally or a representative created or designated by law to act for him and for his benefit or for the benefit of his estate.

While it is true that under the Bankruptcy Law (11 USCA) the trustee is the legal representative of the bankrupt, considering the secrecy which the Legislature intended to surround the inspection of state income tax returns, a restricted construction should be placed upon the language rather than a liberal construction so as to carry out the intention of the Legislature. The policy of the department of taxation and finance has been not to recognize a trustee in bankruptcy as the duly authorized representative of the taxpayer, but as a representative of the creditors of the bankrupt and hostile to the bankrupt. This appears in the statement filed with the court by the department of taxation and finance, dated April 20, 1933, which reads as follows:

"Addressing you on the question which has been raised as to the right of a trustee in bankruptcy to demand of the State Tax Commission copies of the personal income tax returns filed by the bankrupt, and the further question of the authority of the Court to require the production of the returns or of certified or photostat copies thereof, the Department relies upon the provisions of section 384 of the Tax Law to sustain the position it has taken that it is forbidden by the statute to furnish such copies either upon request or upon order of the Court.

"It is not necessary for me to quote the provisions of the law to the Court but may I call your attention particularly to two provisions contained in the section which seem pertinent, to wit, first, that portion thereof which states that the 'officers charged with the custody of such reports and returns shall not be required to produce any of them or evidence of anything contained in them in any action or proceeding in any court except on behalf of the Tax Commission in an action or proceeding under the provisions of this chapter, to which it is a party, or on behalf of any party to any action or proceeding under the provisions of this article.' Also, that 'nothing herein shall be construed to prohibit the delivery to a taxpayer or his duly authorized representative of a certified copy of any return or any report. * * *'

"It is clear that the case before you is not brought under the provisions of Chapter 16 of the Tax Law nor are the returns requested asked to be produced on behalf of the Tax Commission or on behalf of any party to an action or proceeding under the provisions of article 16, and, therefore, we respectfully submit that by reason thereof the Court is without authority to order the production of such returns in this proceeding.

"Regarding the second provision to which your attention was directed above, we submit that the purpose and intent of Section 384 of the Tax Law was to make income tax returns privileged communications between the taxpayer and the Tax Commission and to provide that the matters contained in such returns should not be used against the taxpayer in any proceeding except with the taxpayer's consent or in a proceeding brought by the taxpayer or possibly by the Attorney General under the provisions of article 16 itself. Acting upon the assumption that this was the purpose of the provisions, the Income Tax Bureau has steadfastly refused to furnish copies of income tax returns to any except one who stands in the place of the taxpayer himself such as an executor or administrator of his estate, the committee of one declared to be an incompetent, or an assignee of the taxpayer. Never with authority has any copy been given to a receiver or trustee of a bankrupt taxpayer, upon the theory that such receiver or trustee is the representative of the Court and of the creditors and does not stand in the stead of the bankrupt, and that by divulging the contents of the return, the confidential information therein contained would be used against the taxpayer.

"It has been called to my attention that in this case upon request of the trustee in bankruptcy the Audit Division of the Income Tax Bureau forwarded a communication to the effect that if the usual fee therefor was forwarded, the photostat copies of the taxpayer's returns would be furnished. This action was subsequently revoked. May I say that the original letter emanating from the Audit Division was in error and was contrary to our usual practice and I believe that it cannot serve as an admission by the Commission that the trustee in bankruptcy had a right to demand such copies or that the Commission had the right under the statute to supply them. An office letter cannot serve to change the clear provisions of the statute.

"It is respectfully submitted that the production of such returns cannot be required."

The order does not direct the department of taxation and finance to turn over the income tax returns of the bankrupts to the trustee, but the order directs that the bankrupts sign appropriate documents authorizing the department of taxation and finance, state tax commission, Albany, N. Y., to deliver certified copies of income tax returns to the trustee in bankruptcy. This order by indirection seeks to do that which it cannot do directly.

Application granted. The order of the referee is reversed.

Settle order on notice.